Sally C. and Daniel C. SIMPSON, d/b/a Warehouse Liquor Store, 417 East 11th Street, Tulsa, Oklahoma, Plaintiffs in Error,

v.

OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, Defendant in Error.

No. 41033.

Supreme Court of Oklahoma.

Dec. 28, 1965.

Brown & Garrison, Tulsa, for plaintiffs in error.

Charles Nesbitt, Atty. Gen., Burck Bailey, Asst. Atty. Gen., for defendant in error.

HODGES, Justice.

This is an appeal from a judgment of the District Court of Tulsa County, Oklahoma, sustaining an order of the Oklahoma Alcoholic Beverage Control Board suspending a retail beverage license of Sally C. Simpson and Daniel C. Simpson, d/b/a Warehouse Liquor Store.

The record discloses that the licensees inherited the Warehouse Liquor Store in Tulsa, Oklahoma from their mother who was accidentally killed in an automobile collision in July, 1961. The liquor store continued to be operated by a manager employed by their mother until January 1, 1962, when the licensees were issued a retailer's liquor license and subsequent thereto the licensee, Daniel C. Simpson, personally assumed managerial operation of the business.

On November 21, 1962 the licensees were charged with three counts of violating the Oklahoma Beverage Control Act. At a hearing conducted by the Director of the ABC Board the licensees were found guilty of two counts:

(1) Danny Cox Simpson did sell eight cases of assorted alcoholic beverage to a known bootlegger and former holder of a Federal Tax Stamp.

(2) The said eight cases of assorted alcoholic beverage were sold without having been stamped with the retail license number 7838 on each of the bottles.

The Director suspended the retail liquor license for 15 days on the first count and 5 days on the second to run concurrently and the third count was dismissed.

The decision of the Director was sustained by the ABC Board with the exception that the penalty on the first count was reduced to ten days.

An appeal was then taken to the District Court of Tulsa County, Oklahoma, where the trial court specifically found the licensees "guilty of wilfully and knowingly selling alcoholic beverages on November 8, 1962, without first affixing the retail license number to bottles containing said alcoholic beverages" and ordered the retail liquor license suspended for a period of five days. A motion for new trial was overruled by the trial judge and the licensees have perfected their appeal to this court.

The licensees contend that the ABC Board must show by a preponderance of the evidence that the licensees "willfully" failed to stamp the bottles.

Title 37 O.S. 514 provides in part as follows:

"The Board shall have the following powers and duties:

\*　　\*　　\*　　\*　　\*　　\*

(2) To promulgate rules and regulations, in the manner herein provided, to carry out the purposes of this Act;

\*　　\*　　\*　　\*　　\*　　\*."

The following applicable rules and regulations were promulgated by the Board pursuant to its authorization:

Article 1, Section 5:

"Licensees are at all times responsible for the conduct of their business and are at all times directly responsible for any act or conduct of any employee, which is in violation of the Act or the Rules and Regulations of the Board whether the licensee be present at any such time or not. This section is defined to mean that any unlawful, unauthorized, or prohibited act on the part of any agent or employee shall be construed as the act of the employer, and the employer shall be proceeded against as though he were present and had an active part in such unlawful, unauthorized, or prohibited act, and as having been at the employer's direction and with his knowledge."

Article II, Section 27:

"All retail dealers are required * * * to affix by means of a rubber stamp or gummed labels, the dealers retail license number on a label of each container of alcoholic beverages within his premises, except beer * * * no retailer shall have within his licensed premises any container of alcoholic beverages which does not bear his license number stamped thereon as above required."

The licensees argue that a violation of the rules and regulations as alleged by the Board is governed by Title 37 O.S. 528 which provides:

"(1) Any license issued hereunder shall, by order of the Board, after due notice and hearing: (a) be revoked, or suspended for such period as the Board deems appropriate, if the Board finds that the licensee has wilfully violated any of the provisions of this Act * * *."

In Oklahoma Alcoholic Beverage Control Board v. Milam, Okl., 393 P.2d 823, the Licensee was charged with a violation of the rules and regulations by furnishing a rebate on purchases to several retail liquor stores. There the acts of violations were committed by employees of the wholesaler without his knowledge or consent. We held that "[t]he weight of the Board's argument must be considered in light of the effect of that part of 37 O.S.1961 § 528 [supra]," and that the ABC Board had no authority to suspend a license without a showing and finding of willful violation on the part of the licensee.

In Oklahoma Alcoholic Beverage Control Board v. Naifeh, Okl., 388 P.2d 885, cited by the Board in the present case, the licensee was specifically charged in violation of 37 O.S. 536 which prohibited the distribution of "free goods." We held that the word "willfully" does not appear in 37 O.S. 536, supra, and the question as to whether a violation must be willful was not an issue; that whenever a licensee donates alcoholic beverages, regardless of the purpose or intent, he violates the statute. This section of the Act specifically provided for its own penalty of suspension, cancellation or revocation of a license and therefore the general penalty provision as provided in 37 O.S. 528 was not applicable.

In the present case the licensees were charged with violation of the rules and regulations promulgated by the ABC Board under authority of the Alcoholic Beverage Control Act. The penalty for enforcement of such rules and regulations is governed by 37 O.S. 528.

The question then arises as to the meaning and effect of the word "willfully" as provided in section 528. In this respect the licensees contend the evidence was wholly insufficient to sustain the findings and judgment of the trial court.

In Oklahoma Alcoholic Beverage Control Board v. Milam, supra, we said the word "willfully" is of similar import or the equivalent of "knowingly" and further said:

"It is our interpretation of the Act itself that the word 'willfully' in said sec.

528, in connection with suspension of the license, requires that the licensee at least have some knowledge of the commission of the prohibited acts. Otherwise a licensee, without knowledge of a violation of the Act by a licensee's salesman, could be deprived of a valuable right."

Of course, a person may commit an act in such a manner that his carelessness and indifference to the consequences is so inexcusable that such acts are deemed to have been done knowledgeably and are equivalent to a willful intent. In Shields v. State, 184 Okl. 618, 89 P.2d 756, there was involved a proceeding to remove a public officer from office for "willful maladministration." In discussing the import of the word "willfully" we said:

> "Every voluntary act of a human being is intentional; but, generally speaking, a voluntary act becomes willful in law only when it involves some degree of conscious wrong or evil purpose upon the part of the actor, or at least an inexcusable carelessness on his part, whether the act be right or wrong."

It is important in the construction of a word used in a statute to analyze the whole act itself to determine the legislative intent and purpose. In Arrow Distilleries v. Alexander, 7th Cir., 109 F.2d 397, 406, the court in construing a provision of the Federal Alcoholic Administration Act, said, "the purpose of a statute is material to the determination of the meaning of 'willfully' as used in the statute." It is apparent upon reading of the Oklahoma Alcoholic Beverage Control Act that the legislature intended for the ABC Board to have substantial authority and discretion in closely supervising and controlling the liquor industry in the State of Oklahoma. This is pursuant to the constitutional requirement that the Legislature provide for *strict* regulation and control of liquor industry in our State. Okla.Const. Art. 27 § 3. The Act also stresses the importance of individual responsibility on the part of the licensee for

his own acts and conduct. In light of this construction where the acts in question are personally committed by the licensee or under his direct supervision such conduct is presumptive of being done "willfully."

The basis of contention on the part of the licensees is that, if the liquor bottles were unstamped, this was not known by Mr. Simpson and that his employees had neglected and failed to carry out his instruction. Mr. Simpson testified that he gave his employees definite and explicit instructions to stamp the merchandise as soon as it arrived in the warehouse; that he kept 5 or 6 full time employees; that one of the employees had filled the order; that he did take the money for the sale, but that he never saw the order or had anything to do with the filling of the same.

The inspector for the ABC Board testified that he observed an employee of the licensees loading eight cases of liquor in the car of a person known to him (inspector) to be a bootlegger. After the purchaser drove his car from the licensee's establishment the inspector stopped the car, examined the liquor bottles, and found that none of the bottles were stamped with the liquor store license number. The inspector further testified:

> "I called Agent Brooks to meet me at the store. We went back into the store and asked Mr. Simpson if he remembered the 8 cases. He said he did. We asked if he knew who he sold them to. All he knew was Mr. Williams."

In reference to this conversation, licensee Simpson testified:

> "Q. Do you recall the agent asking you if you had sold 8 cases of liquor to someone?
> A. Yes, sir, he asked me did I make a sale, a large sale, at the time he did not say the specific amount. I told him I had taken the money.
> Q. Were you at the cash register?
> A. I took the money and put it in the cash register."

Mr. Simpson on cross examination further testified that he had been active in the business as manager for approximately three months and during that period he estimated he sold eight cases or more of liquor on a single purchase "at least one-half dozen times." Upon further inquiry he related that the cost of eight cases of liquor is approximately $400.00 and that he had seen this particular purchaser in the store a year ago "purchasing a fairly good order of whiskey."

■ There is no question that the purchase of eight cases of liquor is an unusually large purchase and reason would dictate it was not made for individual consumption. With such a large purchase a reasonable and careful liquor retailer would make some inquiry or examination as to the purchaser and the purpose of the purchase. His failure to do so is evidence of his willful intent to violate the rules and regulations of the ABC Board.

This case, unlike the Milam case, supra, involves a licensee who personally participated in the sale, acting in a supervisory capacity. Here the licensee was the owner and manager of the liquor store and was responsible for his own acts and conduct. If he had made inquiry of the purchaser he may have avoided whatever negligence he now charges to his employees.

The testimony further shows that approximately one year prior to this occurrence an agent of the ABC Board contacted licensee Simpson and advised him that there were occasions when bottles from his store were being handled through bootleggers. The agent recommended to Simpson that in the future he ask the purchaser his name and whether or not the liquor was for resale where the purchase consisted of one case or more. Mr. Simpson testified that they followed this procedure for a time, but that it did not accomplish its purpose and was hurting his business and the practice was discontinued. This testimony shows that the licensee was aware of the need for enforcement of this rule and the Board's concern about the illegal liquor traffic through his store.

The purpose of the rule in requiring a retailer to stamp the liquor bottles with their store number is quite evident. It is to stop the illegal liquor traffic of the bootlegger by enabling the ABC Board to trace the place where the liquor was obtained. The rule is not only reasonable and necessary, but is beneficial and for the protection of the liquor retailer and the public. It is important to the licensed liquor retailers and the people of the State of Oklahoma that the rule be strictly enforced and applied.

The licensees further contend that the "Notice of Contemplated Suspension" which was served upon them was fatally defective in that the licensees were not charged with having "willfully" committed the acts set forth in the complaint. The licensees argue that the written charges must contain all the elements of the alleged offense and that "acting willfully" was a necessary element of the charge.

■ Title 37 O.S. 529 provides that if the ABC Board proposes to suspend or revoke a license it shall give written notice to the licensee which sets forth the grounds for the proposed denial, suspension or revocation. We have examined the Notice and find that the licensees were fully informed and apprised of the charges against them and that said Notice substantially complies with the requirements of this section of the statute.

■ We have carefully examined the record and testimony in the proceeding and after applying the principles announced herein we conclude, that the evidence supports the trial court's finding that the licensee Simpson willfully and knowingly sold alcoholic beverages without first affixing the retail license number to bottles containing said alcoholic beverages.

Judgment affirmed.