**Eddie L. JOHNSON et al.,**
**Appellants,**

**v.**

**Richard WARD et al., Appellees.**

**No. 48514.**

Supreme Court of Oklahoma.

Sept. 23, 1975.

**184**

Frank R. Hickman, Tulsa, for appellants.

Floyd W. Taylor, Gen. Counsel, Oklahoma Dept. of Highways, Oklahoma City, for Dept. of Highways.

Waldo F. Bales, City Atty., Alan L. Jackere, Asst. City Atty., Tulsa, for City of Tulsa, appellees.

BERRY, Justice:

Plaintiffs filed action seeking temporary injunction restraining defendants from vacating or closing a segment of Virgin Street in City of Tulsa. The trial court granted temporary restraining order. After hearing, the court vacated the restraining order and denied injunction. Plaintiffs appeal pursuant to 12 O.S.1971 § 993(a)(2).

Plaintiffs reside near intersection of Virgin Street and Lewis Avenue in City of Tulsa. The Department of Public Highways, State of Oklahoma, and officials thereof are named defendants. The City of Tulsa and others intervened on behalf of defendants.

The record indicates Virgin Street has been open as a public street for more than 50 years. Highway Department is constructing the Cherokee Expressway and as part of this project Virgin Street will be closed at the point where it intersects the expressway. In their petition plaintiffs alleged they unsuccessfully attempted to persuade Highway Department to raise the expressway, or to lower Virgin Street, so as to allow Virgin Street to pass under the expressway.

Plaintiffs alleged closing of the street would adversely affect them by creating (1) more difficulty in going to and from Franklin Park and Lewis Avenue, (2) increase in traffic in residential areas, (3) delay in fire runs, (4) possible flood and drainage problems, (5) modification of former major street plan, (6) loss of income from businesses in area.

They did not seek to enjoin construction of the expressway, but sought to enjoin closing of Virgin Street. They alleged defendants failed to comply with 11 O.S. Supp.1974 §§ 659.1–659.3, or any other statutes authorizing closing of streets.

The trial court held 69 O.S.1971 § 1302, was controlling statute, and that § 1302, supra, authorized Highway Department to close Virgin Street. It further held failure of § 1302, supra, to require notice to plaintiffs did not deprive them of due process because their property was not being taken, and they could maintain damage action to recover any consequential damages they might suffer.

Plaintiffs first and fourth contentions are that 69 O.S. § 1302, supra, does not authorize defendants to close Virgin Street, and that 11 O.S. §§ 659.1–659.3, supra, provide exclusive method by which city street may be closed.

There is no dispute the expressway will be a limited access facility or highway as defined by §§ 224–225 of the Oklahoma Highway Code of 1968 [69 O.S.1971 §§ 101–1909].

Section 1302, supra, provides in part.

"Each governing body shall have authority to designate and establish limited access facilities as new and additional highways, or may designate any existing street or highway as a limited access facility. The governing body shall have authority to provide for the elimination of intersections at grade of limited access facilities with any * * * street * * * now or hereafter existing, either by grade separation, or by closing off such other * * * street * * * or by otherwise protecting such limited access facility."

Plaintiffs first argue § 1302, supra, does not grant authority to close or vacate streets but means "that in construction of highways, service roads must be erected to facilitate entryway thereon."

The express language of § 1302, supra, authorizes the governing body to

limit access "by closing off such other * * * street * * *." When the intent of the legislature is plainly expressed there is no room for construction. Special Indemnity Fund v. Harold, Okl., 398 P.2d 827.

■ Plaintiffs next argue Highway Department has no authority to act under § 1302, supra, until the city or county has complied with provisions of §§ 1301–1331 which provide methods whereby city or county may construct limited access facilities. Those provisions are not applicable here because the Highway Department is constructing the expressway.

■ Plaintiffs also cite 69 O.S.1971 § 3009, which provides no existing street or highway shall be closed by reason of construction or operation of a toll expressway, without consent of the governing body having jurisdiction over the street or highway. Assuming § 3009, supra, would be applicable to situations where street is closed off incident to construction of toll expressway, it is not applicable here because the Cherokee Expressway is not a "toll expressway."

Plaintiffs further allege § 1302, supra, does not grant Highway Department authority to close a city street.

69 O.S.1971 § 219, defines governing body to include the legislative authority of any city or town for streets and highways within the city or town, the Board of County Commissioners as to county highways, and the State Highway Commission as to state highways. Section 1302, supra, authorizes the governing body constructing a limited access facility to close off streets for purpose of eliminating intersection. This section does not expressly authorize the governing body constructing the facility to close off streets or highways under the jurisdiction of another governing body.

However, 69 O.S. § 1303 authorizes a governing body to enter agreements with another governing body, the federal government, or the State of Oklahoma, respecting financing, planning, establishment, im-provement, maintenance or vacation of limited access facilities.

69 O.S.1971 § 1331, provides in part as follows:

"Within their respective jurisdictions, the State of Oklahoma through the Commission, and the governing body of every city * * * and the Board of County Commissioners of each county, acting alone, or in cooperation with any Federal, State, county or city agency having authority to participate in the construction or maintenance of highways, · shall have authority to plan * * * establish * * * maintain and provide limited access facilities * * *"

■ The present dispute is not one between the city and state concerning whether the state may close city's street incident to construction by state of limited access facility. The city has intervened on behalf of Highway Department. In light of §§ 1303 and 1331, supra, we conclude that § 1302 authorizes the governing body constructing a limited access facility to close off a street under jurisdiction of another governing body, at least in absence of objection by the governing body with jurisdiction over the street being closed off.

Plaintiffs further allege 11 O.S.Supp. §§ 659.1–659.3, supra, specify procedures whereby a city may close or vacate a street within the city. They allege procedure specified therein is exclusive and argue city has not complied with such procedure.

Section 659.1, supra, defines "close" to mean legislative act of governing body of a city discontinuing public use of public way or easement, and defines "vacate" as judicial act of district court terminating private and/or public rights in public way or easement and vesting title in real estate in private ownership. Section 659.2 provides procedure whereby street may be closed retaining right to reopen it. Section 659.3 provides method whereby owners of abutting property may foreclose city's right to reopen a closed street.

Plaintiffs cite *State of Oklahoma ex rel. Gil Burk v. Oklahoma City, Okl.,* 522 P. 2d 612, for proposition procedure set out in § 659, supra, is exclusive. We note § 659 has been substantially amended since this Court's decision in that case. Further, in that case the city sought to vacate the street so as to permit it to revert to abutting owners. Here, the portion of Virgin Street being closed off will remain in use as a part of the limited access expressway.

██ We have held that different legislative enactments dealing with the same subject must be construed together as a harmonious whole so as to give effect to each. *Wade v. Brown,* Okl., 516 P.2d 526, *Letteer v. Conservancy Dist.,* Okl., 385 P. 2d 796. We conclude the provisions of §§ 659.1–659.3 are not applicable where a street is closed off by Highway Department pursuant to 69 O.S. § 1302, supra, for purposes of eliminating its intersection with limited access facility being constructed by Highway Department.

Plaintiffs next allege that if § 1302, supra, authorizes closing of Virgin Street, it violates Art. V § 57, Okl.Const., and is unconstitutional.

Art. V § 57, supra, provides in part:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except * * * bills adopting a code * * *"

Plaintiffs allege there is nothing in the title of the Act indicating it authorized the State to close or vacate streets within a municipality.

In *National Mutual Cas. Co. v. Briscoe,* 188 Okl. 440, 109 P.2d 1088, this Court considered Art. V § 57, supra, and stated:

"The provision is satisfied if an act has a general subject fairly indicated by the title, and the fact that the act involves many details does not offend the section if all of those details relate to the same general subject which is expressed in the title * * *"

See also *Coe v. State Election Board,* 203 Okl. 356, 221 P.2d 774; *Bond v. Phelps,* 200 Okl. 70, 191 P.2d 938.

Section 1302, supra, was originally adopted as § 4 of Senate Bill 300, 1945, OSL, Ch. 1c. That Act's title provides in part:

"AN ACT authorizing the planning, designation, construction, use, regulation, alteration, improvement, maintenance, and vacation of limited access highway facilities * * *"

In 1968 the legislature recodified and revised the highway code in H.B. 501, OSL 1968, Ch. 415. That Act's title provides in part:

"An Act relating to highways; establishing a highway code and declaring legislative intent; defining words and phrases; creating department of highways * * * and prescribing powers, duties and functions thereof; providing for state and county highway systems; * * * providing for acquisition of rights-of-way, for limited access facilities * * *"

The title of 1945 Act indicates subject included therein is limited access facilities. The title of the 1968 Act indicates subject included therein is a highway code, including provision for limited access facilities. One cannot have a limited access facility without eliminating intersections.

██ We conclude the right to close off streets incident to construction of a limited access facility is a detail which relates to general subject expressed in the title of both Acts. This contention is without merit.

Plaintiffs next contend the Highway Code of 1968, §§ 101–1909, supra, is void. They contend they have right of ingress and egress to their premises by way of Virgin Street and cannot be deprived of this right without due process of law and compensation for loss. They contend due process requires they be given notice and

an opportunity to be heard before their property interest in Virgin Street is taken.

Art. II § 24, Okl.Const., provides in part:

"Private property shall not be taken or damaged for public use without just compensation * * * Until the compensation shall be paid * * * the property shall not be disturbed, or the proprietary right of the owner divested * * *"

■ Art. II § 24, supra, does require compensation to property owners who suffer special injury, different in kind and not in degree from that suffered by community in general, even though there has been no physical invasion of their property. See *Atchison T. & S. F. Ry. Co. v. Terminal Oil Mill Co.,* 180 Okl. 496, 71 P.2d 617; *Oklahoma Turnpike Authority v. Chandler,* Okl., 316 P.2d 828.

■ Assuming plaintiffs may suffer special injury from closing of Virgin Street, the issue presented is whether they are entitled to notice and opportunity to be heard prior to time Virgin Street is closed incident to construction of the expressway.

We foresee many difficulties which might arise if plaintiffs' contention is upheld. The condemning authority will be required to commence condemnation proceedings against all persons who might suffer consequential damages from the contemplated project. In such proceedings the condemning authority would no doubt allege that some of the parties would not suffer damages from the project. Further, any person not joined in the condemnation suit [perhaps because the condemning authority determined he could not possibly suffer damage from the project] would be entitled to enjoin the project until his interest in right of access was condemned.

In *Edwards v. Thrash,* 26 Okl. 472, 109 P. 832, we considered the right of abutting owners to enjoin change in street grade until they had been compensated for conse-

quential damages which might arise from change. We considered numerous authorities from other states and then stated:

"* * * Consequential damages would be difficult to ascertain before the improvement had been made. This is one of the reasons given by many of the courts as to why it was not intended by the Constitution and statute makers that provisions providing for compensation first to be made for the taking or damaging of property by virtue of eminent domain proceedings did not include consequential damages, and we agree with the Supreme Court of Missouri * * * in holding that where the property of the citizen is not taken and his proprietary right not disturbed, but the damage to his property is purely consequential, he is not entitled to have same ascertained and paid before the proposed public work is done, and is not entitled to have the work done in pursuance of valid municipal and legislative authority enjoined, but his remedy is one at law for damages."

Further, in *In re Grand River Dam Authority,* Okl., 484 P.2d 505, we held in paragraph 4 of the syllabus:

"If authorized construction of electric transmission line within boundaries of city streets should result in injury to abutting property owners different from that suffered by general public, or such owners' ingress and egress to property is destroyed, or materially impaired, owners' remedy is by action in nature of reverse condemnation and not by injunction."

This is consistent with cases from other jurisdictions. In *Brock v. State Highway Comm.,* Kan., 195 Kan. 361, 404 P.2d 934, the court considered rights of abutting owners who alleged their access to highway has been unreasonably restricted. That court expressly disapproved prior cases to contrary and stated:

"Since the landowner has an adequate remedy at law he cannot proceed by in-

junction or mandamus to protect himself from the alleged wrongful taking of his access without compensation. * * *"

Likewise, in *Nueces County Drainage & Con. Dist. v. Bevly,* Tex.Civ.App., 519 S. W.2d 938, the court stated:

"The distinction between 'taking' and 'damaging' is important where equitable relief is sought, because an injunction will not issue to restrain a threatened 'damaging' * * *"

See also 30 C.J.S. Eminent Domain § 406.

We do note *Thomas v. Farrier,* 179 Okl. 283, 65 P.2d 526, wherein we held abutting owners have standing to enjoin a private party from obstructing highway where such obstruction constitutes a public nuisance. In that case the highway had not been properly vacated and there was no statutory authority authorizing defendant to obstruct highway. The present case is distinguishable because § 1302, supra, specifically authorizes Highway Department to close off street incident to construction of limited access facility, at least in absence of objection by governing body having jurisdiction over the street.

We conclude this contention is without merit.

 The granting or refusing of injunction rests to some extent within the sound discretion of trial court, and its judgment in refusing to grant injunction will not be disturbed on appeal unless it can be said the court abused its discretion, or that the judgment rendered is clearly against the weight of the evidence. *Leathers v. Commercial National Bank in Muskogee,* Okl., 410 P.2d 541. We conclude the trial court did not abuse its discretion in denying plaintiffs' request for temporary injunction and the judgment is not against the clear weight of the evidence.

The trial court's order is affirmed.

All Justices concur.