CITIES AND TOWNS
Title 11 O.S. 659.1 [11-659.1] et seq. (1976), does not repeal by implication the power of the governing body of a city to vacate streets or other public places for purposes of urban renewal as set forth in the Urban Redevelopment Law, 11 O.S. 1601 [11-1601] — 11 O.S. 1624 [11-1624] (1971). The Attorney General has considered your request for an opinion wherein you ask the following question: "Did the passage of 11 Okla. Stat. 659.1, et seq., repeal by implication the provisions of the Urban Redevelopment Law granting the power to a governing body of a city to permanently vacate streets, roads, sidewalks, ways, or other public places for urban renewal purposes?" Title 11 O.S. 659.1 [11-659.1] (1976) provides in pertinent part: "In this act, unless the context otherwise requires: "1. 'Close' means a legislative act of the governing body of a city or town discontinuing the public use of a public way or easement without affecting title to real property;" "2. 'Vacate' means a judicial act of the district court terminating private and/or public rights in a public way or easement and vesting title in real estate in private ownership;" (Emphasis added) These statutes provide a method for a city or town to close or discontinue the use of a public thoroughfare or easement and for District Courts to vacate such public ways or easements. They are general in their nature and were passed to specifically repeal 11 O.S. 649 [11-649] (1971) and specify the methods by which a city or town could effectuate the closures of any public ways or easements and by which a court may foreclose the right for reopening such closed public ways or easements. The Urban Redevelopment Law is a specific act dealing with the authority of an Urban Renewal Authority to conduct their business which includes granting to a city the plenary power to vacate public ways or easements for specific urban renewal projects. The Urban Redevelopment Law, as applied to incorporated cities in the State of Oklahoma with a population in excess of 100,000, is found at 11 O.S. 1601 [11-1601] through 11 O.S. 1624 [11-1624] (1971). Title 11 O.S. 1611 [11-1611] (1971) provides in part: "(a) For the purpose of aiding in the planning, undertaking or carrying out of an urban renewal project, an incorporated city or any other public body may: (1) . . . furnish, dedicate, close, vacate, pave, install, grade, re-grade, plan or replan streets, roads, sidewalks, ways or other places; . . ." (Emphasis added) Title 11 O.S. 1613 [11-1613] (1971) provides in part: "(a) . . . The Urban Renewal Authority designated as the agency to execute such plan shall have the right to acquire by condemnation or otherwise, any interest or right or combination of rights in real property, including a fee simple title thereto, necessary to the execution of the approved plan . . . ." The Legislature specifically provided for the city and the Urban Renewal Authority to have such powers in order to facilitate solutions to problems enumerated in 11 O.S. 1604 [11-1604] of the Urban Redevelopment Law: ". . . There exists in certain incorporated cities, blighted areas . . . which constitute a serious and growing menace, injurious and inimical to the public health, safety, morals, and welfare of the said cities; that the existence of such areas . . . aggravates traffic problems and substantially impairs or arrests the elimination of traffic hazards and the improvement of traffic facilities, and that the prevention and elimination of a blight is a matter of state policy and state concern . . . ." It is clear that it was the legislative intent that the Urban Redevelopment Law would supersede any other contrary provisions in the statutes. Title 11 O.S. 1620 [11-1620] (1971) provides: "Insofar as the provisions of this act are inconsistent with the provisions of any other law, the provisions of this act shall be controlling. The powers conferred by this act shall be in addition and supplemental to the powers conferred by any other law." A reading of 11 O.S. 659.1 [11-659.1] — 659.9 (1976), clearly negates any suggestion that the Legislature, by implication, intended to repeal the power of the city to vacate and replan streets for urban redevelopment purposes. The provisions of 11 O.S. 659.1 [11-659.1] et seq. (1976), provide a procedure for closing and vacating public ways whenever deemed necessary or expedient. Closings and vacations under 11 O.S. 659.1 [11-659.1] et seq. (1976), are not related to the predominant state or municipal public purposes of elimination of blight. Rules of statutory construction require the reconciliation of the Urban Redevelopment Law and 11 O.S. 659.1 [11-659.1] et seq. (1976), if possible. The Court held in Johnson v. Ward, 541 P.2d 182
(Okla. 1975): ". . . . That different legislative enactments dealing with the same subject must be construed together as a harmonious whole so as to give effect to each. Wade v. Brown, Okl., 516 P.2d 526, Letteer v. Conservancy Dist., Okl., 385 P.2d 796 More specifically, a special statute will apply as to matters provided for therein and the general statute will not apply. Sebring v. Federal Deposit Insurance Corp., 401 P.2d 483 (Okl. 1963). If the Legislature had desired or intended the general statute to apply to particular matters covered by a special statute it would have made such provision. A statute which is enacted for the primary purpose of dealing with a particular subject prevails over a statute which contains language which might be broad enough to cover the subject matter if the special statute was not in existence, but does not refer to it. Ruben v. Thompson,406 P.2d 263 (Okla. 1965). In Koch v. Oklahoma Turnpike Authority, 208 Okl. 556, 257 P.2d 790 (1953), the Court, in reconciling the provisions for service of process under 66 O.S. 53 [66-53] (1971) (the condemnation statute used by the Turnpike Authority) with the general statute on service of process in Title 12, held that the condemnation statute was a special statute governing acquisition of land. Its terms should control because it dealt with the specific matter of condemnation and such special statute should prevail over the general statute. This rationale was stated another way in Winters v. Winters, 297 P.2d 556
(Okla. 1956), where the Court opined that a general statute does not repeal a previous particular act unless there is express reference to previous legislation and held that the two statutes could be construed together and were not inconsistent. Finally, it is well established that repeals by implication are not favored, and that special acts referring to special subjects will not be repealed by general laws, but may stand independently for a distinct and useful purpose unless there is such repugnancy between them that both cannot stand. Incorporated Town of Valliant v. Mills, 28 Okl. 811,116 P. 190 (1911); State ex rel King v. White, 170 Okl. 126,39 P.2d 69 (1934). In reading the Urban Redevelopment Law, a clear purpose is stated and specific means of fulfilling that purpose are enumerated. Title 11 O.S. 659.1 [11-659.1] et seq. (1976), in no way negates the powers delegated cities under 11 O.S. 1601 [11-1601] et seq. (1971). The plain reading of the language of these statutes supports this position. It is, therefore, the opinion of the Attorney General that your question be answered in the negative. Title 11 O.S. 659.1 [11-659.1] et seq. (1976), does not repeal by implication the power of the governing body of a city to vacate streets or other public places for purposes of urban renewal as set forth in the Urban Redevelopment Law, 11 O.S. 1601 [11-1601] — 11 O.S. 1624 [11-1624] (1971). (PAUL C. DUNCAN)