1998 OK 2

N.E. McNEILL, Jr., on his own behalf and as Class Representative, Respondent,

v.

CITY OF TULSA; Municipal Employees Retirement Plan Board of Trustees, and Larry Stovall, Employee Benefit Manager, Petitioners.

No. 87119.

Supreme Court of Oklahoma.

Jan. 13, 1998.

David L. Pauling, Michael C. Romig, Tulsa, for Petitioners.

James R. Eagleton, Eagleton, Eagleton & Harrison, Inc., Tulsa, for Respondents.

SIMMS, Justice.

¶ 1   City of Tulsa and its Retirement Plan seek our review of the trial court's certified interlocutory order finding that 72 O.S.1991 § 67.13a, which grants war veterans a military service credit toward their retirement benefits, applies to Tulsa's Plan for its employees. We find that it does not and reverse the trial court.

¶ 2   We granted certiorari to address questions regarding the proper construction of § 67.13a and to determine the section's reach. The relevant portion of the statute, with the amendatory language at issue in italics, provides:

"* * * War veterans, as defined above, shall receive maximum benefits available for each year of creditable service, not to exceed five (5) years, for active military service for *retirement benefits in the retirement systems within the State of Oklahoma;* * * * The provisions of this act shall include military retirees, whose retirement was based only on active service, that have been rated as having twenty percent (20%) or greater service-connected disability by the Veterans Administration or the Armed Forces of the United States."

¶ 3   The City of Tulsa created the Tulsa Municipal Employees Retirement Plan (the Plan), by ordinance (Tulsa, Okl.Ordinances tit. 28, ch. 1, § 100), pursuant to the enabling legislation set forth at 11 O.S.1991, §§ 48–101 to 48–106, which empowers cities to create and fund their own retirement systems and establish the qualifications for their participants' eligibility for retirement benefits. The ordinance requires that both the City and the employees must make contributions to the Fund for the benefit of the partici-

pants. The City must contribute in such amounts as are necessary to provide the benefits set forth in the Plan, comply with applicable law and keep the Plan actuarially sound. Funds are not contributed to provide for increased benefits attributable to military service.

¶ 4   N.E. McNeill was employed by the City of Tulsa for many years. He retired in 1992, and began receiving benefits from the Plan at that time. Later, he sought to increase his benefits by claiming entitlement under § 67.13a to credit for his active military service during war time. As his benefits did not include the military credit, the City refused his request and McNeill filed this action against the City and the Plan on his own behalf and as representative for a class of other similarly situated veterans.

¶ 5   The defendants denied the application of the statute to the City's plan. They contended the provision included only the retirement systems *of* the State, i.e. those plans created and funded by the State of Oklahoma. The trial court, however, agreed with McNeill that the phrase "in the retirement systems within the State of Oklahoma" should be read to include *all* retirement systems, public and private, located within the boundaries of the state and decided the matter in McNeill's favor. Finding the meaning of the phrase was plain and unambiguous and afforded no opportunity for judicial interpretation, the court held, as a matter of law, that the statute is "broad enough" to encompass Tulsa's Plan for its employees.

¶ 6   The trial court certified its order for review by this Court pursuant to 12 O.S.1991 § 952(b)3, and defendants filed their petition for certiorari which this Court has previously granted. The trial court never reached the question of certification of a class and, therefore, the issues addressed here involve only McNeill individually.

¶ 7   The City and the Plan contend here, as they did below, that the legislature did not intend the military credit of § 67.13 to apply to this municipal Plan and that the statutory language cannot be construed to include *all* pension and retirement plans in the state, private as well as public. We

agree. We are not persuaded by the reasoning and conclusion of the trial court and the view of the dissenters to the contrary which would impact every existing private retirement fund and all public retirement systems.

¶ 8 Proper construction of the provision is determinative of the matter as it requires finding that Tulsa's Plan is not within the reach of the statute. We, therefore, find it unnecessary to address defendants' other arguments advanced regarding constitutional and statutory considerations which would preclude application of § 67.13a to the Plan if it were held within the scope of the statute. These arguments include: (1) impairment of contractual rights of vested Plan participants guaranteed by Article 2, sec. 15 of the Oklahoma Constitution; and (2) encroachment of the City's control of its fiscal matters in violation of the Municipal Budget Act, 11 O.S.1991, §§ 17–201 through 216.

¶ 9 It is axiomatic that legislative intent is to be first sought in the language of the statute and when that intent is plainly expressed so that the meaning of the statute is clear and the statute is uncontrolled by other parts of the statute or other statutes upon the same subject, there is no room for judicial construction and the statute must be followed without further inquiry. *Cave Springs Public School Dist. I–30, of Adair County v. Blair,* 613 P.2d 1046 (Okl.1980). However, where adherence is urged to the "strict letter" of a statute and the literal interpretation would lead to an inconsistency or incongruity between different parts of the enactment as they bear on each other and would produce consequences clearly beyond legislative contemplation, judicial interpretation becomes necessary to avoid such incongruity and to ascertain the true meaning of the particular words in accord with the legislative intent. *State ex rel. Rucker v. Tapp,* 380 P.2d 260 (Okl.1963). The goal of the court is always to construe apparently conflicting legislative enactments dealing with the same subject together as a harmonious whole so as to give effect to each provision. *Abbott v. Board of Trustees of Oscar Rose, Etc.,* 586 P.2d 1098 (Okl.1978). To accomplish this goal it is proper to consider the history and consistent purpose of the legisla-

tion on the subject and to discover the policy of the Legislature as disclosed by the course of the legislation. *State, ex rel., Rucker,* supra.

¶ 10 The meaning of the phrase "in the retirement systems within the State of Oklahoma" is not plain and certain. It is ambiguous and its ambiguity is demonstrated by these strikingly opposing views of its meaning. The literal application of these words in their ordinary sense as determined by the trial court, would be contrary to the purpose of this legislation and place the statute in conflict with other legislative provisions. It is apparent to us that the trial court confined the scope of its inquiry as to the meaning of the phrase far too narrowly.

¶ 11 In the interpretation of statutes, courts do not limit their consideration to a single word or phrase in isolation to attempt to determine their meaning, but construe together the various provisions of relevant legislative enactments to ascertain and give effect to the legislature's intention and will, and attempt to avoid unnatural and absurd consequences. Words and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context and they must harmonize with other sections of the act to determine the purpose and intent of the legislature. *Groendyke Transport Inc. v. Gardner,* 353 P.2d 695 (1960). The subject matter and purpose of a statute are material to ascertaining the meaning of a word or phrase used and that language should be construed to be harmonious with the purpose of the act, rather than in a way which will defeat it. *Simpson v. Oklahoma Alcoholic Beverage Control Bd.,* 409 P.2d 364 (1965).

¶ 12 Title 72 is the Soldiers and Sailors Act. Since statehood the purpose of the act has been to provide benevolent services by the state for the care and protection of "ex-service persons", including rehabilitation, education and training, financial aid and loans, hospitalization, long-term care and burial. The Act also creates the War Veterans Commission and the Oklahoma Department of Veterans Affairs. Until the 1981 amendment at issue here, § 67.13a had been virtually unchanged since 1968 when it was amended

to provide "war veterans" with entitlement for special benefits from the state: "tax exemptions, ... special permits and veterans' preferences for state employment". (Okl. Sess.L., ch. 102, § 1).

¶ 13 When the legislature amended § 67.13a in 1981, (Okl.Sess.L.1981, Ch. 288 § 1), by adding that war veterans "shall receive maximum benefits available for each year of creditable service, not to exceed five (5) years for active military service for retirement systems within the State of Oklahoma", there was no indication that the change was intended to reach any further than retirement systems *of* and *for* employees of the State of Oklahoma. Since that statute already concerned war veterans and preferences for their employment by the State of Oklahoma, this amendment granting those veterans credit for their military service in their retirement benefits received from that state employment is not an unexpected change. The amendment is unquestionably limited to the existing topic and it is consistent with the history and purpose of the statute and the act.

¶ 14 The defendants correctly argue that the trial court's decision finding prior military service is a qualifying factor applicable to Tulsa's plan under § 67.13a, places that section in direct conflict with 11 O.S.1991, § 48–102, which provides in relevant part:

"Every municipality or municipal authority establishing a retirement fund and system is authorized and directed to provide for the control and management of the system by ordinance. The ordinance shall provide, in addition to other provisions, for:

1. The qualifications of the persons eligible for retirement benefits;

2. The minimum age for retirement of employees;

3. The limitations of the amounts to be paid to persons eligible for retirement benefits;

4. A Board of Trustees to administer that fund, and the duties, membership and powers of such board;

5. The amount of contributions to be made by the municipality or authority, and the amount to be made by the employee, if any; and

6. Such rules and regulations as the municipality or authority shall determine necessary for the proper regulation of the retirement system and fund ..."

¶ 15 Pursuant to the statutory directive, the qualifications for vesting in the Tulsa Plan are established by the terms of Tulsa's ordinance, as are its rules governing measurement of years of credited service. We find nothing which would have prohibited Tulsa from providing credit for military service if it had chosen to do so, but its existing provisions do not include such credit.

¶ 16 The City and the Plan assert that the legislature had no intention of imposing the military service credit on any retirement system other than those which the State of Oklahoma funds and controls. They correctly contend that the district court's interpretation of § 67.13a would result in the Plan bearing the burden of an unknown amount of liability which was unintended and unfunded by the legislature for the State of Oklahoma provides no funding to this system. The City and its employees contribute to the system according to actuarial assumptions and those assumptions do not include the military service credit.

¶ 17 The defendants also correctly point out that the legislature had no difficulty expressing its intention to incorporate the military credit provision of § 67.13 into retirement systems for public employees funded by the state and *explicitly* imposing that qualification upon those plans. For instance, the legislature explicitly directed the credit to apply to the statutorily created and state-funded Oklahoma Public Employees Retirement System (OPERS). 74 O.S.1991, §§ 901, et seq. by adding the following definition of a System member's military service to 74 O.S.1991, § 902(23):

"(23) 'Military service' means service in the Armed Forces of the United States in time of war or national emergency, as defined in Section 67.13a of Title 72, from which the member was honorably discharged." [Now 74 O.S.Supp.1995 § 902(22).]

¶ 18 Title 74 O.S.1991, § 913(1)(d) directs the following implementation of the military service credit established in § 67.13a and set out in § 902(23), supra, for prior OPERS service credit:

"(d) Any member who served in the Armed Forces of the United States, as defined in subsection (23) of Section 902 of this title, prior to membership in the Oklahoma Public Employees Retirement System shall be granted prior service credit, not to exceed five (5) years, for those periods of active military service during which he was a war veteran ..."

¶ 19 The legislature has also expressly provided for military service qualification credit in the parallel state systems for retirement and pension benefits for municipal fire fighters and police officers, (Firefighters Pension and Retirement System, 11 O.S. 1991, §§ 49–100 et seq., 11 O.S.1991, § 49–138; Police Pension and Retirement System, 11 O.S.1991, §§ 50–101, 11 O.S.1991, § 50–128), and also schoolteachers, (Teachers' Retirement System, 70 O.S.1991, §§ 17–101, et seq., 70 O.S.1991, §§ 17–104(2)(b), (3) and 113).

¶ 20 We observe that while this Court has never directly passed on the scope of § 67.13a, the issue was addressed indirectly in *Allen v. Retirement Sys. For Just. & J.,* 769 P.2d 1302 (Okl.1988), where the title to the act was the focus of litigation. In that case, the OPERS Board of Trustees denied a retired judge's application for military service credit made pursuant to § 67.13a, based on the Board's belief that the statute was constitutionally infirm because of a defective title. The Board refused to apply § 67.13a to the plaintiff judge or the members of the class of retired judges who were war veterans, because the Attorney General had issued an opinion finding the amendment violative of Art. 5, § 57, Okla. Const., as the title did not embrace the subject of the amendment—the allowance of credit for prior military service in state retirement systems. This Court held the statute free from constitutional infirmity by reason of its inclusion in the 1981 decennial recompilation which had cured the defect. Speaking to the reach of the statute, the Allen court stated, at 1304:

"The Legislature amended 72 O.S.1971, § 67.13a (as last amended by Okla.Sess.L. 1978, Ch. 1), effective *June 29, 1981,* to allow military service credit for war veterans or disabled military retirees **who are members of any state retirement system (including URSJJ)**". (Emphasis added).

¶ 21 For the reasons discussed, the certified interlocutory order entered by the trial court is Reversed and the matter is Remanded for further proceedings not inconsistent with this opinion.

KAUGER, C.J., SUMMERS, V.C.J., LAVENDER, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

HODGES and OPALA, JJ., dissent.

HODGES, Justice, with whom OPALA, Justice, joins, dissenting:

¶ 1 I dissent with this Court's decision holding that section 67.13a of title 72 does not require municipalities to credit retirees for military service.

¶ 2 Section 67.13a provides:

War veterans, as defined above, shall receive maximum benefits available for each year of creditable service, not to exceed five (5) years, for active military service for retirement benefits in the retirement systems *within the State of Oklahoma....*

(Emphasis added.) The Court recognizes that the plain language of section 67.13a covers municipal retirement plans. However, the Court reasons that the plain language is in direct conflict with section 48–102 of title 11, and, thus, the plain language does not control.

¶ 3 When construing statutes, the cardinal rule is to determine the legislative intent. *Nelson v. Pollay,* 1996 OK 142, ¶ 6, 916 P.2d 1369, 1373. "Where the language of a statute is plain and unambiguous, and its meaning clear and no occasion exists for the application of rules of construction, the statute will be accorded the meaning as expressed by the language therein employed." *Cave Springs Public School Dist. I–30 v. Blair,* 1980 OK 103, ¶ 4, 613 P.2d 1046. In this case, the Court did not need to look further

than the plain language. Even so, statutes addressing retirement benefits are to be liberally construed in favor of the public employee. *See Allen v. State of Oklahoma ex rel. Board of Trustees of the Oklahoma Uniform Retirement System for Justices and Judges,* 1988 OK 99, 769 P.2d 1302; *Dangott v. ASG Industries, Inc.,* 1976 OK 131, ¶ 12, 558 P.2d 379, 382. The plain language of the statute and a liberal construction of the phrase "within the State of Oklahoma" leads to the conclusion that the Oklahoma Legislature intended section 67.13a to apply to municipal employees. Further, the fact that section 67.13a is found under the sections on Soldiers and Sailors does not diminish its force and validity. *Green v. Green,* 309 P.2d 276, 278, 1957 OK 70.

¶ 4   I do not find that section 67.13a conflicts with section 48–102 of title 11. The City of Tulsa (City) has elected to provide retirement benefits to its employees pursuant to the enabling provisions of sections 48–101 to 48–106 of title 11 of the Oklahoma Statutes. Tulsa, Okla., Ordinances tit. 28, ch. 1, § 100. Under section 48–101 of title 11, municipalities are allowed, but not required, to provide retirement benefits for their employees. Section 48–102 provides for a municipal retirement fund to be supported at the city's discretion by contributions from the municipality or joint contributions of the city and the employee. Under sections 48–101 through 48–106, the city is given authority to set the limit on the amount of benefits to be paid to the employee, to determine the amount of its contributions, to set the amount of the employee's contributions, and to determine the persons eligible for retirement benefits.

¶ 5   I agree that the enabling act gives broad discretion to the City of Tulsa. This control given municipalities over retirement plans is not exclusive. It is subject to other state statutes, such as section 67.13a. *Northeastern Oklahoma Building and Construction Trades Council v. Tulsa Metropolitan Water Auth.,* 1974 OK 14, 519 P.2d 488; *Town of Mannford v. Watson,* 1964 OK 110, 394 P.2d 506.

¶ 6   In *Northeastern Oklahoma Building and Construction Trades Council,* 1974 OK 14, ¶ 15, 519 P.2d at 488, this Court held that because Tulsa was a public body, a construction contract was subject to the prevailing wage statute. In *Watson,* 1964 OK 110, 394 P.2d at 506, this Court held that attorneys could not recover from the City of Mannsford under contingent fee contract without proof the fee complied with statutory requirements. Thus, under this state's case law, City contracts are subject to applicable statutory provisions.

¶ 7   The City recognized its need to conform to state statutory as well as case law in section 300 of the Municipal Employees' Retirement Plan. Section 300 provides: "The Employer shall make contributions to the Fund in such amounts and at such times as shall be necessary to provide the benefits set forth herein and *in accordance with the provisions of any law applicable to the Plan.*" (Emphasis added.) Thus, under the ordinance which contains the terms of the contract between its employees and the City, the contract is subject to "any law applicable to the Plan." Since section 67.13a is applicable to the retirement plan, the employment contract is subject to the provisions of section 67.13a.

¶ 8   Contrary to Tulsa's argument, the application of section 67.13a to municipalities does not unconstitutionally impair Tulsa's and its employees' contract. The laws in effect at the time a contract is made are considered part of the contract. *McDermott v. Bennett,* 395 P.2d 566, 570, 1964 OK 197. The legislature may modify public employees' pension rights, even though the rights are contractually based, so long as the modifications are reasonable and necessary and provide offsetting advantages to the disadvantages. *Taylor v. State and Education Employees Group Insurance Program,* 1995 OK 51, ¶ 13, 897 P.2d 275, 279. Thus, section 67.13a was a part of the plaintiff's employment contract, and the legislature had authority to modify the contract.

¶ 9   A past employee of the City whose retirement benefits are vested have contractual rights in the retirement plan. *Taylor,* 1995 OK 51, ¶ 14, 897 P.2d at 279. These vested rights are protected from modifications in the Plan. Okla. Const. art. II, § 15;

*Taylor,* 1995 OK 51, ¶ 13, 897 P.2d at 279. However, the state may make modifications; to the plan as long as the modifications are reasonable and necessary, serve an important public purpose, and do not impair the actuarial soundness of the fund. *Taylor,* 1995 OK 51, ¶ 14, 897 P.2d at 279.

¶ 10  In *Taylor,* the legislature passed a statute transferring $39,600,000 from the Teachers Retirement System of Oklahoma to the Education Employees Group Insurance Reserve Fund. This Court upheld the transfer against an attack that the transfer was unconstitutional in that it violated article II, section 15. This Court reasoned that the transfer was reasonable and necessary, served an important public policy, and did not compromise the integrity of the retirement system.

¶ 11  Under the City's retirement plan, an employee contributes a percentage of earning to the plan. Tulsa, Okla., Ordinances tit. 28, ch. 3, § 301. The City is required to "make contributions to the Fund in such amounts and at such times as shall be necessary to provide the benefits set forth herein and *in accordance with the provision of any law applicable to the Plan." Id.* at § 300 (emphasis added). Because section 67.13a of title 72 of the Oklahoma Statutes was applicable to the retirement plan, the City was required to make contributions in an amount sufficient to cover the additional benefits for military credit. Thus, the retirees whose rights had vested when the amendment to section 67.13a became effective should not suffer a reduction in their benefits because the City failed to meet its obligations to the retirement plan.

¶ 12  A finding that section 67.13(a) applies to municipalities would require an analysis of whether the decision's application is prospective only. In determining whether a decision is limited to prospective application, this Court will weigh three factors: (1) whether the decision establishes a new principal of law, (2) "whether retrospective operation will further or retard [the statute's] operation," and (3) whether the decision "could produce substantial inequitable results if applied retroactively." *Chevron Oil Company v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct.

349, 355, 30 L.Ed.2d 296 (1971); *Kay Electric Cooperative v. State ex rel. Oklahoma Tax Comm'n,* 1991 OK 76, ¶ 4, 815 P.2d 175, 177.

¶ 13  In *Campbell v. White,* 1993 OK 89, 856 P.2d 255, this Court gave prospective effect to its ruling "to avoid needless disruption to the operation of state agencies." In *Campbell,* this Court invalidated the functional approach taken by the Legislature in enacting legislation as violative of the single-subject rule of art. 5, section 56 of the Oklahoma Constitution. Because retrospective application of the decision would have resulted in disruption of state agencies due to lack of funding, this Court determined that the decision should be applied prospectively only.

¶ 14  The record is insufficient to determine the effect of applying 67.13(a) on the functioning of the City in the present case. I would remand the matter with an instruction to the trial court to take evidence on this issue, to determine the extent to which the functions of the City would be impaired, and to determine whether the effect of applying section 67.13(a) to municipalities should only be applied prospectively.