OSCN Found Document:FARMACY, LLC v. KIRKPATRICK

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 FARMACY, LLC v. KIRKPATRICK
2017 OK 37
Case Number: 114417
Decided: 05/09/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 37, __ P.3 __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 




FARMACY, LLC, Petitioner/Appellee,
v.
CATHY KIRKPATRICK, in her Official Capacity as the Executive Director of THE OKLAHOMA VETERINARY BOARD, and THE STATE OF OKLAHOMA, EX REL. THE OKLAHOMA BOARD OF VETERINARY MEDICAL EXAMINERS, Defendants/Appellants.
ON APPEAL FROM THE DISTRICT COURT IN OKLAHOMA COUNTY,
OKLAHOMA, THE HONORABLE BARBARA G. SWINTON, DISTRICT JUDGE
REVIEW OF AN ORDER FROM THE
OKLAHOMA BOARD OF VETERINARY MEDICAL EXAMINERS
¶0 This case is an appeal from the District Court of Oklahoma County, where the trial judge granted the request of a wholesaler of veterinary prescription drugs to set aside a final order of the Oklahoma Board of Veterinary Medical Examiners wherein the Board ordered the wholesaler to produce certain requested documents and fined it $25,000 for failure to do so. The Veterinary Board appealed and we retained the matter.
RULING OF THE OKLAHOMA BOARD OF VETERINARY MEDICAL
EXAMINERS REVERSED; TRIAL COURT AFFIRMED.
Christian S. Huckaby, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, for Petitioner/Appellee.
Justin P. Grose, Charles A. Dickson, III, and James V. Barwick, Office of the Attorney General, Oklahoma City, Oklahoma, for Defendants/Appellants.
WINCHESTER, J.
FACTS AND PROCEDURAL BACKGROUND
¶1 Appellee, Farmacy, LLC, filed as a domestic limited liability company with the Oklahoma Secretary of State's office on September 3, 2013. On September 13, 2013, the Oklahoma State Board of Pharmacy (Pharmacy Board) issued a wholesaler license to Farmacy to allow it to conduct business as a wholesale distributor of veterinary prescription drugs. Farmacy timely registered its wholesaler license with Appellant, the Oklahoma Board of Veterinary Medical Examiners (Vet Board), as required by 59 O.S.2011, § 353.13(G)(4) and OAC 775-26-1-1(g). 
¶2 In November 2013, Farmacy received a drug order from a customer seeking medicine for his livestock operation. Farmacy explained to the customer that, pursuant to 59 O.S.2011, § 353.13(G), he would need a prescription from his veterinarian in order for Farmacy to fill the order.[1] The customer instructed Farmacy to contact the veterinarian directly to obtain the prescription but when Farmacy contacted the veterinarian, he refused to provide the prescription. Farmacy sent the veterinarian, via overnight mail, a copy of its duly issued wholesaler license and a formal request to provide the prescription. The veterinarian did not respond to Farmacy's request.
¶3 In mid-December 2013, Farmacy learned from a manufacturer with which it does business that Farmacy was under investigation by the Vet Board.
[2] On January 14, 2014, Farmacy received a letter from Cathy Kirkpatrick, head of the Vet Board, ordering Farmacy to produce a complete copy of all of its records from the date of its licensure by the Pharmacy Board to the Vet Board no later than January 28, 2014. The letter stated that the Vet Board had "received specific information that Farmacy, LLC purchased and resold prescription medications to the end user prior to its registration with" the Vet Board. The letter further stated that the Vet Board was "currently investigating" Farmacy under the authority of the Oklahoma Veterinary Practice Act (Vet Act), 59 O.S.2011, § 698.1-689.30, and that failure to produce the records would be sanctionable under 59. O.S.2011, § 698.14a (E)(22). 
¶4 In response to the letter, Farmacy filed a Petition for Declaratory Ruling with the Vet Board on January 24, 2014.
[3] Farmacy sought rulings from the Vet Board regarding its duties and obligations to register with the Vet Board and referenced its license granted by the Pharmacy Board as well as its timely December registration with the Vet Board. On February 21, 2014, the Vet Board conducted a hearing regarding Farmacy's petition wherein the Board found that Farmacy had timely complied with the registration of its wholesaler's license and issued an order declaring such. The Vet Board Order, however, still required Farmacy to comply with the January 14, 2014, letter to produce its records and ordered Farmacy to allow inspection of the requested records by March 7, 2014.
¶5 The Vet Board maintains that arrangements were made with Farmacy's counsel for the Vet Board to come to Farmacy's place of business to inspect the records during business hours on March 12, 2014. These arrangements were later postponed to accommodate the schedule of Farmacy's owners' cattle operation. In the meantime, on March 14, 2014, the Pharmacy Board made a full inspection of Farmacy's facility and business records, and found Farmacy and its records to be in compliance with the Pharmacy Act. The Pharmacy Board provided the letter of compliance to the Vet Board yet the Vet Board still demanded inspection of Farmacy's records.
¶6 On March 17, 2014, Farmacy filed an action against the Vet Board in Latimer County claiming the Vet Board had exceeded its statutory authority with an improper investigation of Farmacy. Farmacy alleged that, as a wholesaler of veterinary prescription drugs, it was to be solely regulated by the Pharmacy Board. Farmacy sought and received an ex parte Temporary Restraining Order (TRO) prohibiting the Vet Board from further investigation of Farmacy. Farmacy voluntarily dismissed this suit on April 14, 2014, to re-file in Oklahoma County.
[4] The dismissal resulted in the expiration of the Temporary Restraining Order.
¶7 Ten days later, on April 24, 2014, the Vet Board filed an administrative proceeding against Farmacy. The Vet Board Complaint contained allegations of violations of the Vet Act and Vet Board rules by "failing to furnish the Vet Board, its staff or its agents, information requested or failure to cooperate with a lawful investigation conducted by or on behalf of the Board." The Vet Board also alleged Farmacy acted in an unprofessional manner in violation of OAC 775:10-5-30 and OAC 775:26-1-1. Farmacy denied the allegations that it had refused to produce records for inspection. The matter was set for hearing in August. 
¶8 Prior to the August hearing, on July 3, 2014, an investigator from the Vet Board, Dale Fullerton, appeared at Farmacy's business to inspect the records. However, when Fullerton arrived, Farmacy's business was closed and he was not allowed to inspect the documents. Pursuant to the Vet Board's rules, the Vet Board's inspection of a wholesaler's records must occur during "reasonable business hours." OAC 775:26-1-1(e). This is the sole visit by the Vet Board to Farmacy's place of business to inspect the records.
[5] 
¶9 On August 29, 2014, the Vet Board conducted a hearing and issued a written order on September 23, 2014, finding that Farmacy "violated the Board's Order issued on February 21, 2014, by not timely allowing inspection of Farmacy's records and by failing to cooperate in the Board's investigation." The Vet Board assessed a $25,000 fine against Farmacy, payable within thirty days from receipt of the Order, as well as costs and expenses incurred by the Vet Board in the investigation and prosecution of the administrative proceeding. 
¶10 On September 14, 2014, Farmacy filed a Petition for Declaratory Relief and Request for Injunction in the District Court of Oklahoma County. Farmacy sought a ruling that the Vet Board exceeded its authority by ordering Farmacy to produce the requested documents and subsequently fining the failure to so produce. The parties filed briefs and oral argument was heard on October 1, 2015, after which the trial court reversed the ruling of the Vet Board. The Vet Board appealed this ruling and we retained the matter.
STANDARD OF REVIEW
¶11 The Oklahoma Administrative Procedures Act (OAPA), 75 O.S.2011, § 250 et seq., as amended, governs our review. Under the OAPA, appellate courts apply the same review standards as the trial court to the administrative record. City of Tulsa v. State ex rel. Public Employees Relations Bd., 1998 OK 92, ¶12, 967 P.2d 1214, 1219. 
¶12 Whether to grant injunctive relief is generally within the sound discretion of the trial court and its judgment will not be disturbed on appeal unless the lower court has abused its discretion or its decision is clearly against the weight of the evidence. Johnson v. Ward, 1975 OK 129, ¶ 42, 541 P.2d 182, 188. An action for an injunction is one of equitable cognizance and this Court will consider all of the evidence on appeal. Bd. of Regents of University of Oklahoma v. National Collegiate Athletic Ass'n, 1977 OK 17, ¶ 3, 561 P.2d 499, 502.
¶13 The interpretation to be given to a statute is a question of law, subject to our plenary, independent and non-deferential examination using a de novo standard of review. State ex rel. Dept. of Transportation v. Little, 2004 OK 74 , ¶10, 100 P.3d 707, 711. Legislative intent governs statutory interpretation and is generally ascertained from a statute's plain language. The Pentagon Academy, Inc. v. Independent Sch. Dist. No. 1 of Tulsa County, 2003 OK 98, ¶19, 82 P.3d 587, 591. However, where a strict, literal interpretation of the statute would lead to inconsistent or incongruent results between the enactment's different parts, judicial interpretation becomes necessary to reconcile the discord. McNeill v. City of Tulsa, 1998 OK 1, ¶11, 953 P.2d 329, 332. To ascertain legislative intent, we construe together the various provisions of an act, in light of their underlying general purpose and objective, not limiting our consideration to a single word or phrase. World Publishing Co. v. Miller, 2001 OK 49, ¶7, 32 P.3d 829, 832; McNeill, supra, 1998 OK 1 at ¶11, 953 P.2d at 332. 
DISCUSSION
¶14 In this matter of first impression, we must determine whether the Vet Board has authority to investigate, demand production of records and subsequently fine the failure to produce said records of a wholesaler of veterinary medicine who is licensed and regulated by the Oklahoma State Pharmacy Board. We find that while the Vet Board may have the right to inspect, in the regular course of the wholesaler's business, certain documents kept by the wholesaler pertaining to its sale and/or distribution of veterinary prescription drugs, the Pharmacy Board has the sole authority to investigate and penalize its licensee for any alleged violations of the Pharmacy Act. 
I. APPLICATION OF VET BOARD RULES TO FARMACY
¶15 Farmacy is a licensed wholesaler
[6] of veterinary prescription drugs regulated by the Oklahoma State Pharmacy Board as set forth in the Oklahoma Pharmacy Act, 59 O.S.2011, § 353 et seq. The Oklahoma Legislature gave the Pharmacy Board the authority to: (1) regulate the sales of drugs, medicines, chemicals and poisons; (2) regulate the dispensing of drugs and medicines in all places where drugs and medicines are compounded and/or dispensed; (3) issue licenses to manufacturers, repackagers, outsourcing facilities, wholesale distributors, pharmacies and other dispensers; and (4) enter and inspect, by its members or by its duly authorized representatives, any and all places, including premises, equipment, contents and records, where drugs, medicines, chemicals or poisons are stored, sold, vended, given away, compounded, dispensed or manufactured. 59 O.S.2011, § 353.7(2)-(4) and (5).
¶16 As it pertains to wholesalers of veterinary prescription drugs, the Pharmacy Act provides: 


"Nothing in the Oklahoma Pharmacy Act shall prevent veterinary prescription drugs from being shipped directly from an Oklahoma licensed wholesaler or distributor to a client; provided, such drugs may be supplied to the client only on the order of an Oklahoma licensed veterinarian and only when a valid veterinarian-client-patient relationship exists. 


"1. Drugs supplied pursuant to the provisions of this subsection shall not be required to be certified by a pharmacist prior to being supplied by a wholesaler or distributor.
"2. It shall be a violation of state law for a client or his or her authorized agent to acquire or use any prescription drug other than according to the label and/or outside of a valid veterinarian-client- patient relationship (VCPR);
"3. It shall be a violation of state law for an Oklahoma licensed wholesaler or distributor to sell a prescription-labeled drug to a client or his or her authorized agent without a valid VCPR in place; and
"4. Compliance with the Oklahoma Pharmacy Act as it relates to veterinary prescription-labeled drugs shall be pursuant to rules promulgated by the Oklahoma State Board of Veterinary Medical Examiners and in consultation with the State Veterinarian in accordance with state law."
59 O.S.2011, § 353.13(G).[7] 
¶17 Meanwhile, the Oklahoma Veterinary Practice Act (Vet Act), 59 O.S.2011, § 698.1 et seq., created the Vet Board to "regulate and enforce the practice of veterinary medicine in" Oklahoma. 59 O.S.2011, § 698.3(A). The Vet Act sets forth numerous provisions dealing with the regulation of licensed veterinarians and certificate holders, including the Board's primary functions of "determining a person's initial and continuing qualification and fitness for the practice of veterinary medicine, of proceeding against the unlawful and unlicensed practice of veterinary medicine and of enforcing the" Vet Act. See also, 59 O.S.2011, § 698.5a(2)("investigators shall have the authority and duty to investigate and inspect the records of all licensees in order to determine whether the licensee is in compliance with applicable narcotics and dangerous drug laws and regulations."). In fact, § 698.7 of the Act sets forth twenty-five enumerated duties, such as "review and investigate complaints and adverse information about licensees and certificate holders" and "discipline licensees and certificate holders." 59 O.S.2011, § 698.7(b) and (c). Not one of the enumerated duties references wholesalers of veterinary prescription drugs.
¶18 Under 59 O.S.2011, § 353.13(G) of the Pharmacy Act, the Vet Board was given limited statutory authority to promulgate rules related to the disposition of veterinary prescription-labeled drugs. The Vet Board set forth those rules, known as the Inspection Rule and the Registration Rule, in Chapter 26 of Title 775 of the Oklahoma Administrative Code, OAC 775:26-1-1. 
¶19 The Vet Board rules require licensed wholesalers or distributors to "maintain accurate written records containing information relating to the sale and/or distribution of" veterinary prescription drugs. OAC 775:26-1-1(e). The records shall be maintained for five years from the date of distribution of the drug and "shall be available for inspection upon request by" the Vet Board "during reasonable business hours." OAC 775:26-1-1(e) (the Inspection Rule). Additionally, the wholesaler "shall annually notify" the Vet Board no later than January 1 of each year with "the name, address and business telephone number of each sales representative and/or veterinarian employed by or under contract with the wholesaler or distributor." OAC 775:26-1-1(g). (the Registration Rule). 
¶20 No part of the Vet Act gives the Vet Board authority to regulate wholesalers licensed by the Pharmacy Board. The only connection the Vet Board has to wholesalers is with respect to the Inspection and Registration Rules promulgated by the Vet Board to ensure the existence of valid VCPR's for its licensed veterinarians as required by the Pharmacy Act. 59 O.S.2011, § 353.13(G). This Court has recognized that: 


"generally, an officer or agency has, by implication and in addition to the powers expressly given by statute, such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers. However, an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority."
Marley v. Cannon, 1980 OK 147, ¶ 10, 618 P.2d 401, 405 (citations omitted).
There is nothing in the Vet Act that makes wholesale distributors of veterinary prescription drugs, who are licensed and regulated by the Pharmacy Board through the Pharmacy Act, subject to the Vet Act and its investigative power. As such, the Vet Board is without statutory authority to investigate or sanction wholesalers who fall under the regulation of the Pharmacy Board, let alone fine a wholesaler $25,000 for failure to produce records that the Vet Board could have inspected in the regular course of the wholesaler's business. 
¶21 A battle of wills created the instant litigation. Farmacy's owners believed the Vet Board harmed Farmacy's relationships with manufacturers and veterinarians by conducting an improper investigation into Farmacy's registration while the Vet Board took exception to Farmacy's willingness to produce the requested documents. The Pharmacy Board inspected the records of Farmacy in this case and found them to be in compliance. The Vet Board, pursuant to its own rules promulgated in conjunction with the Pharmacy Act, had the right to enter Farmacy's place of business during regular business hours to inspect documents needed in the investigation of a valid VCPR of one of its licensed veterinarians. Such inspection attempt never occurred during Farmacy's business hours. Moreover, the Vet Board could have easily subpoenaed the requested records where any failure to produce would have been enforceable in court. Accordingly, the trial court was correct in issuing the writ of prohibition enjoining the Vet Board from further proceeding against Farmacy.
II. EXHAUSTION OF ADMINISTRATIVE REMEDIES
¶22 Farmacy need not exhaust any administrative remedies, as alleged by the Vet Board. Ordinarily, a plaintiff is required to pursue all available administrative relief before bringing a court action and failure to do so is fatal. See Waste Connections, Inc. v. Oklahoma Department of Environmental Quality, 2002 OK 94, ¶7, 61 P.3d 219, 223. One need not exhaust administrative remedies, however, where "the power of the agency to act at all under the statutory scheme it is charged with administering" is being challenged. Marley v. Cannon, 1980 OK 147, ¶¶16-21, 618 P.2d 401, 406-407. Here, Farmacy challenges the Vet Board's authority to compel production of documents and issue fines to wholesalers who are governed by the Pharmacy Act. The district court did not lack adjudicative power to issue its ruling and we find no error in the trial court's decision. 
AFFIRMED.
CONCUR: COMBS, C.J., GURICH, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COLBERT AND REIF, JJ.
RECUSED: WYRICK, J.
FOOTNOTES
[1] In order for a wholesaler to provide veterinary prescription drugs to a client, a veterinarian must prescribe the medicine and there must be a valid veterinarian-client-patient relationship. 59 O.S.2011, § 353.13(G), repealed effective November 1, 2016, and the portion relevant to the instant matter was renumbered as 59 O.S.2015, § 353.29.1. 
[2] Farmacy alleges the veterinarian who previously refused to provide the prescription to Farmacy for a customer is who prompted the Vet Board's investigation into Farmacy's license and registration. Farmacy alleges that the Vet Board sent out emails to every veterinary drug manufacturer that does business in the State of Oklahoma identifying that it was investigating Farmacy and asking for any documents the manufacturer may have pertaining to Farmacy. Farmacy alleges its business was harmed as a result of these emails. In addition, Dr. Tim Forwoodson, then-veterinarian for Shero Ranch, a business run by Farmacy owners, notified the owners he could no longer act as the ranch veterinarian due to the Vet Board's investigation of Farmacy. The Vet Board later alleged that they were investigating Dr. Forwoodson all along and it was records pertaining to his relationship with Farmacy that the Vet Board sought.
[3] The petition was later amended and re-filed on February 18, 2014. 
[4] Farmacy dismissed the suit after the Vet Board filed a motion to dismiss on the grounds of improper jurisdiction in Latimer County. The Vet Board argued that any suit against it must be brought in Oklahoma County where it is situated.
[5] The Vet Board maintains that aside from the rescheduled arranged meeting in March, 2014, Farmacy had on one other occasion offered to deliver the documents to the Vet Board in Oklahoma City. However, before that could occur, Farmacy filed its lawsuit in Latimer County and received the TRO restraining the Vet Board from further pursuit of the documents. 
[6] Pursuant to the Pharmacy Act, a wholesaler is a company "engaged in the business of distributing dangerous drugs or medicines at wholesale to pharmacies, hospitals, practitioners, government agencies or other lawful drug outlets permitted to sell or use drugs or medicines, or as authorized in subsection G of Section 353.13 of" the Act. 59 O.S.2011, § 353(33). 
[7] The Legislature repealed this section effective November 1, 2016, while this case was pending. The subject of the section relevant to our review was renumbered at 59 O.S.2015, § 353.29.1. 




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 49, 32 P.3d 829, 72 OBJ 1807, WORLD PUBLISHING CO. v. MILLER
Discussed
 2002 OK 94, 61 P.3d 219, WASTE CONNECTIONS, INC. v. OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY
Discussed
 2003 OK 98, 82 P.3d 587, THE PENTAGON ACADEMY, INC. v. INDEP. SCHOOL DIST. NO. 1 OF TULSA COUNTY
Discussed
 2004 OK 74, 100 P.3d 707, STATE ex rel. DEPT OF TRANSPORTATION v. LITTLE
Discussed
 1975 OK 129, 541 P.2d 182, JOHNSON v. WARD
Discussed
 1977 OK 17, 561 P.2d 499, BD. OF REGENTS, ETC. v. NAT. COLLEGIATE ATH. ASS'N
Discussed
 1980 OK 147, 618 P.2d 401, Marley v. Cannon
Discussed at Length
 1998 OK 1, RULE NO. 55 ESTABLISHING JUDICIAL ETHICS ADVISORY PANEL
Discussed
 1998 OK 2, 953 P.2d 329, 69 OBJ 208, McNEILL v. CITY OF TULSA
Cited
 1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, City of Tulsa v. State ex rel. Public Employees Relations Board
Discussed
Title 59. Professions and Occupations
 Cite
Name
Level

 59 O.S. 698.5a, Authority and Duties of Investigators for State Board of Veterinary Medical Examiners
Cited
 59 O.S. 353.7, Powers and Duties of Board
Cited
 59 O.S. 353.29.1, Veterinary Prescription Drugs
Discussed at Length
 59 O.S. 353, Short Title - Purpose - Profession
Discussed
 59 O.S. 353.13, Repealed
Discussed at Length
 59 O.S. 698.1, Short Title
Discussed
 59 O.S. 698.3, Board of Veterinary Medical Examiners - Qualifications
Cited
 59 O.S. 698.7, Powers and Duties of Board
Cited
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 250, Short Title
Cited