Dear Treasurer Robert A. Butkin,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. How should the State of Oklahoma distribute forestry payments to eligible counties pursuant to 16 U.S.C. § 500 and the Secure Rural Schools and Community Self-Determination Act of 2000?
 2. If the counties in Oklahoma that are eligible for these funds opt for the "full payment amount" under the Secure Rural Schools and Community Self-Determination Act of 2000, is each county's share based on the United States forest acreage in that county or is it based on the average actually received in past years by that county?
 Background
¶ 1 Presently, two counties in Oklahoma (County "A" and County "B") include land within a designated national forest. For many years the Oklahoma State Treasurer has received payments to the State of Oklahoma under 16 U.S.C. § 500. This money has historically been distributed to the two counties in proportion to the number of acres of national forest land within each county. Id. In 1997 the United States Department of Agriculture Forest Service ("Forest Service") acquired additional land in County "A" and added it to the national forest, resulting in an increase in the county's proportion of the acreage.[1] In October 2000 Congress enacted the Secure Rural Schools and Community Self-Determination Act of 2000, Pub.L. 106-393,114 Stat. 1607 (codified at 16 U.S.C. 500 note) [hereinafter SRSCSDA]. In 2001 this Act was amended in the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2002, Pub.L. 107-76, 115 Stat. 704, at 739, sec. 751 (2001) (codified at 16 U.S.C. 500 note) [hereinafter amended SRSCSDA]. This law provides, in part, that counties with land in a national forest may elect between taking a proportionate share of annual "25-percent" revenues for the current fiscal year under 16 U.S.C. § 500, or taking a so-called "full payment amount" based on a historical average. Id. sec. 751(a), (b). You ask, in effect, if County "A" and County "B" each determine to take the "full payment amount" under the amendment, is the share each receives to be based on thepresent proportional acreage, or is the share each receives to be based on a historical average for the eligibility period (FY 1986-FY 1999)? Depending on interpretation of the SRSCSDA, the amounts to be paid to County "A" and County "B" could vary considerably, possibly to the detriment of one county or the other.
¶ 2 To fully respond to your request, analysis of three laws is required: (A) 16 U.S.C. § 500, (B) the SRSCSDA, and (C) 62 O.S.2001, § 326[62-326]. As part of the process we must determine: (i) the proper method for determining what annual amount of federal forest money is payable to the State, and (ii) how this amount is allocated by the State among counties with national forests within their boundaries.
 Construing 16 U.S.C. § 500 And 62 O.S. 2001, § 326[62-326]
¶ 3 Title 16 U.S.C. § 500 provides, in pertinent part, as follows:
 On and after May 23, 1908, twenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State or Territory in which such national forest is situated, to be expended as the State or Territorial legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated: Provided, That when any national forest is in more than one State or Territory or county the distributive share to each from the proceeds of such forest shall be proportional to its area therein. . . . The Secretary of Agriculture shall, from time to time as he goes through his process of developing the budget revenue estimates, make available to the States his current projections of revenues and payments estimated to be made under the Act of May 23, 1908, as amended, or any other special Acts making payments in lieu of taxes, for their use for local budget planning purposes.
Id. (emphasis added).
¶ 4 Thus, 25% of national forest revenue is to be paid each fiscal year by the United States, proportionately to each state or territory in which is located a national forest, to be expended as the state or territory may determine for road and school use. Trinity Indep. Sch. Dist. v. Walker County,287 S.W.2d 717, 722 (Tex.App. 1956). This is not a payment in lieu of taxes, but rather a payment by the federal government in recognition of the national interest in education and road building within counties where national forests, or parts thereof, are located. Id.
¶ 5 The question of beneficial use of funds received from national forest revenues by the federal government and granted to states for the purpose of providing schools and roads is left to the discretion of the state legislature. Goodin v. Bd. ofEduc., 601 P.2d 88, 90 (Okla. 1979); see King County v.Seattle Sch. Dist. No. 1, 263 U.S. 361, 364 (1923); GeorgiaPac. Corp. v. County of Mendocino, 357 F. Supp. 380, 389 (N.D. Cal. 1973).
¶ 6 The Oklahoma Legislature adopted 62 O.S. 2001, § 326[62-326], which provides:
 From and after the passage of this act, each county treasurer of this state shall, out of any funds now on hand and any funds hereinafter received by him from the United States Government as said county's share of the rentals from forest reserves located therein, immediately apportion same as follows:
 1st. Twenty-five percent (25%) of all money now on hand and hereinafter received to be prorated and apportioned among the various school districts of said counties situated and located contiguous to such forest reserves, according to the scholastic population thereof;
 2nd. Seventy-five percent (75%) of all such money now on hand and hereinafter received, shall be deposited in a special road fund to be expended on county highways leading into and away from such forest reserves, under the direction and supervision of the board of county commissioners of such county.
Id. (emphasis added).
¶ 7 The reference to "forest reserves" has been held to be synonymous with "national forest" as designated in federal statutes. Bd. of County Comm'rs v. Snellgrove, 428 P.2d 272,275 (Okla. 1967). Thus, the Oklahoma Legislature acted to designate how federal national forest revenues, received by the State and distributed to counties, are to be used. Goodin,601 P.2d at 91; see A.G. Opin. 69-171, 108-09.
¶ 8 It would appear that on a fiscal year basis, 25% of the revenues received by the United States from sales of forest products from within national forests must be distributed to states or territories, and the amount of money to each state or territory must be proportional to the amount of national forest land within such state or territory, compared to the total amount of national forest land in the United States. Further, within Oklahoma, logical application of the federal and State statutes would require distribution of the State's portion to each county containing national forest land on a proportional basis.
 Secure Rural Schools And Community Self-Determination Act Of 2000
¶ 9 The main issue to be resolved is what effect, if any, adoption of the SRSCSDA has on the federal formula for distributing national forest revenues to Oklahoma, and on Oklahoma's method for distributing such money to affected counties.
¶ 10 In Section 2 of the SRSCSDA entitled "Finding and Purposes" Congress found, among other things, that (i) counties in which federal forest lands are situated are deprived of revenues they otherwise would receive if the lands were held in private ownership (Pub.L. 106-393, § 2(a)(3), 114 Stat. 1607, § 2(a)(3) (codified at 16 U.S.C. 500 note)); (ii) revenue from federal timber sales has decreased significantly in recent years (id. § 2(a)(9)); (iii) this decline in shared revenues has adversely affected road and school funding in many counties (id. § 2(a)(10)); and (iv) there is a need to stabilize road and school funding in these areas (id. § 2(a)(13)), and improve the deteriorating situation in affected counties. Id. § 2(b)(1). It follows that in Oklahoma payments to counties under the SRSCSDA and 16 U.S.C. § 500 would help to replace ad valorem taxes and other revenues, lost (or unrealized) as a result of the land being held by the United States, rather than by private hands.
¶ 11 The SRSCSDA is divided into several parts: Title I, Secure Payments for States and Counties Containing Federal Lands (the part of the Act we are concerned with), allows counties receiving annual allocations of national forest revenues to elect to take a "full payment amount" in lieu of the traditional payment under16 U.S.C. § 500; Title II, Special Projects on Federal Lands, allows counties, acting through advisory committees, to recommend certain projects within national forests benefitting local communities, with costs to be paid by the Secretary of Agriculture; and Title III, County Projects, allows counties to engage in certain activities such as fire prevention or county planning in areas not directly within national forests, with all or part of the costs thereof to be paid by the Secretary of Agriculture, upon proper approval of the project.[2]
¶ 12 Title I, Sections 101 and 102 of the SRSCSDA, provides:
SEC. 101. DETERMINATION OF FULL PAYMENT AMOUNT FOR ELIGIBLESTATES AND COUNTIES.
(a) CALCULATION REQUIRED. —
 (1) ELIGIBLE STATES. — For fiscal years 2001 through 2006, the Secretary of the Treasury shall calculate for each eligible State that received a 25-percent payment during the eligibility period an amount equal to the average of the three highest 25-percent payments and safety net payments made to that eligible State for the fiscal years of the eligibility period.
 (2) BUREAU OF LAND MANAGEMENT COUNTIES. — For fiscal years 2001 through 2006, the Secretary of the Treasury shall calculate for each eligible county that received a 50-percent payment during the eligibility period an amount equal to the average of the three highest 50-percent payments and safety net payments made to that eligible county for the fiscal years of the eligibility period.
 (b) ANNUAL ADJUSTMENT. — For each fiscal year in which payments are required to be made to eligible States and eligible counties under this title, the Secretary of the Treasury shall adjust the full payment amount for the previous fiscal year for each eligible State and eligible county to reflect 50 percent of the changes in the consumer price index for rural areas (as published in the Bureau of Labor Statistics) that occur after publication of that index for fiscal year 2000.
 SEC. 102. PAYMENTS TO STATES FROM NATIONAL FOREST SYSTEM LANDS FOR USE BY COUNTIES TO BENEFIT PUBLIC EDUCATION AND TRANSPORTATION.
 (a) PAYMENT AMOUNTS. — The Secretary of the Treasury shall pay an eligible State the sum of the amounts elected under subsection (b) by each eligible county for either —
 (1) the 25-percent payment under the Act of May 23, 1908 (16 U.S.C. 500), and section 13 of the Act of March 1, 1911 (16 U.S.C. 500); or
 (2) the full payment amount in place of the 25-percent payment.
(b) ELECTION TO RECEIVE PAYMENT AMOUNT. —
 (1) ELECTION; SUBMISSION OF RESULTS. — The election to receive either the full payment amount or the 25-percent payment shall be made at the discretion of each affected county and transmitted to the Secretary by the Governor of a State.
 (2) DURATION OF ELECTION. — A county election to receive the 25-percent payment shall be effective for two fiscal years. When a county elects to receive the full payment amount, such election shall be effective for all the subsequent fiscal years through fiscal year 2006.
 (3) SOURCE OF PAYMENT AMOUNTS. — The payment to an eligible State under this section for a fiscal year shall be derived from any revenues, fees, penalties, or miscellaneous receipts, exclusive of deposits to any relevant trust fund, or special accounts, received by the Federal Government from activities by the Forest Service on the Federal lands described in section 3(1)(A) and to the extent of any shortfall, out of any funds in the Treasury not otherwise appropriated.
(c) DISTRIBUTION AND EXPENDITURE OF PAYMENTS. —
 (1) DISTRIBUTION METHOD. — A State that receives a payment under subsection (a) shall distribute the payment among all eligible counties in the State in accordance with the Act of May 23, 1908 (16 U.S.C. 500), and section 13 of the Act of March 1, 1911 (36 Stat. 963; 16 U.S.C. 500).
 (2) EXPENDITURE PURPOSES. — Subject to subsection (d), payments received by a State under subsection (a) and distributed to eligible counties shall be expended as required by the laws referred to in paragraph (1).
(d) EXPENDITURE RULES FOR ELIGIBLE COUNTIES. —
(1) ALLOCATIONS. —
(A) USE OF PORTION IN SAME MANNER AS 25-PERCENT PAYMENTS. — If an eligible county elects to receive its share of the full payment amount, not less than 80 percent, but not more than 85 percent, of the funds shall be expended in the same manner in which the 25-percent payments are required to be expended.
 (B) ELECTION AS TO USE OF BALANCE. — An eligible county shall elect to do one or more of the following with the balance of the funds not expended pursuant to subparagraph (A):
 (i) Reserve the balance for projects in accordance with title II.
 (ii) Reserve the balance for projects in accordance with title III.
 (iii) Return the balance to the General Treasury in accordance with section 402(b).
(2) DISTRIBUTION OF FUNDS. —
 (A) TREATMENT OF TITLE II FUNDS. — Funds reserved by an eligible county under paragraph (1)(B)(i) shall be deposited in a special account in the Treasury of the United States and shall be available for expenditure by the Secretary of Agriculture, without further appropriation, and shall remain available until expended in accordance with title II.
 (B) TREATMENT OF TITLE III FUNDS. — Funds reserved by an eligible county under paragraph (1)(B)(ii) shall be available for expenditure by the county and shall remain available, until expended, in accordance with title III.
(3) ELECTION. —
 (A) IN GENERAL. — An eligible county shall notify the Secretary of Agriculture of its election under this subsection not later than September 30 of each fiscal year. If the eligible county fails to make an election by that date, the county is deemed to have elected to expend 85 percent of the funds to be received under this section in the same manner in which the 25-percent payments are required to be expended, and shall remit the balance to the Treasury of the United States in accordance with section 402(b).
 (B) COUNTIES WITH MINOR DISTRIBUTIONS. — Notwithstanding any adjustment made pursuant to section 101(b) in the case of each eligible county to which less than $100,000 is distributed for any fiscal year pursuant to subsection (c)(1), the eligible county may elect to expend all such funds in accordance with subsection (c)(2).
 (e) TIME FOR PAYMENT. — The payment to an eligible State under this section for a fiscal year shall be made as soon as practicable after the end of that fiscal year.
Id. Pub.L. 106-393, 114 Stat. 1607 (codified at16 U.S.C. § 500 note).
¶ 13 In 2001 Congress amended the SRSCSDA in the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2002, Pub.L. 107-76, 115 Stat. 704, at 739, sec. 751 (2001) (codified at 16 U.S.C. 500 note), providing, in pertinent part, as follows:
 (a) TEMPORARY USE OF EXISTING PAYMENTS TO STATES TABLE. — Notwithstanding section 101(a)(1) of the Secure Rural Schools and Community Self-Determination Act of 2000 (Public Law 106-393; 16 U.S.C. 500 note), for the purpose of making the fiscal year 2001 payments under section 102 of such Act to eligible States and eligible counties, the full payment amount for each eligible State and eligible county shall be deemed to be equal to the full payment amount calculated for that eligible State or eligible county in the Forest Service document entitled "P.L. 106-393, Secure Rural Schools and Community Self-Determination Act" and dated July 31, 2001, subject to the adjustment required by section 101(b) of such Act.
 (b) REVISION OF TABLE. — For the purpose of making payments under section 102 of such Act to eligible States and eligible counties for fiscal years 2002 through 2006, as required by section 101(a)(1) of such Act, the Secretary of Agriculture shall revise the table referred to in subsection (a) to accurately reflect, to the maximum extent practicable, each eligible State's and eligible county's historic share of the 25-percent payments and safety net payments made for the fiscal years of the eligibility period.
Id.
¶ 14 Our interpretation of these provisions of the amended SRSCSDA is that Congress has not undertaken to revise the basic provisions of 16 U.S.C. § 500 so as to decrease the amount of national forest revenues to states, nor has it altered the power of individual states to allocate proceeds among eligible counties and to specify how the funds may be beneficially used. This is consistent with the position taken by the United States Department of Agriculture Forest Service.[3] From the legislative history of the SRSCSDA, it is clear that Congress intended to stabilize and/or increase financial assistance to counties with national forest land within their boundaries, not decrease such assistance, recognizing, among other things, that revenues from logging operations in national forest areas have declined markedly in recent years.[4] Further, the amendment to the legislation passed in 2001 authorizes the Secretary of Agriculture to revise payment tables to reflect changed circumstances in appropriate situations.[5]
¶ 15 Taken together, the applicable provisions in Title I, Section 751(b), of the amended SRSCSDA and Title 1, Section 101 of the SRSCDA, provide that for fiscal years 2002 through 2006: (1) a county may elect whether to take a "full payment" amount (i.e., an average of the three highest payments made to the state under 16 U.S.C. § 500 during the 13-year eligibility period), or take the so-called "25-percent payment" amount it would ordinarily have received annually under 16 U.S.C. § 500 without such averaging; (2) the United States is required to pay to each state the sum of the amounts elected by each eligible county; and (3) the state must distribute the money in accordance with16 U.S.C. § 500, whereby the state determines how a county's share of national forest money may be spent, provided that the distributive share of each county must be proportional to the area of national forest land within such county.[6]
¶ 16 The "full payment amount" under Title 1, Section 101(a)(1) of the SRSCSDA is couched in terms of "the average of the three highest 25-percent payments and safety net payments made to thateligible State for the fiscal years of the eligibility period."Id. (emphasis added). If Congress had intended to alter the basic formula for distribution to counties, presumably it would have said so. Instead, the legislation speaks in terms of payments to states, leaving it to the individual states to determine how the money is distributed, and the use to which it is put under 16 U.S.C. § 500. Further, pursuant to Title 1, Section 102(a) of the SRSCSDA, the United States Secretary of the Treasury is required to "pay an eligible State the sum of the amounts" for each eligible county, whether the county elects to take a "full payment amount" under Section 102(b)(1), or whether the county takes a "25-percent" share under 16 U.S.C. § 500. (Emphasis added).
¶ 17 When a county, under Title 1, Section 102(b)(2) of the SRSCSDA, elects to receive the "full pay-ment amount," such election is effective for all subsequent fiscal years through 2006. We conclude the election on whether to take the "full payment amount" for the 2001-2006 period is irrevocable once it is made by the county, and this election is made when such information is given to the Governor and transmitted to the United States Secretary of Agriculture ("Secretary"). Id. § 102(b)(1).
¶ 18 A distinction must be made between the method used by the United States in calculating the annual amount to be paid to a state when one or more counties elect to take a "full payment amount" under the SRSCSDA, and the method to be used by the state in calculating how monies received are to be distributed among the eligible counties. As previously indicated, under the circumstances underlying your question, it is entirely possible that the basis for the Secretary's calculations, as to the total amount of payment to a state, may be based on a different percentage of total federal forest acreage within a county than the state's basis for distribution of federal revenues received.
 Analysis
¶ 19 Under 16 U.S.C. § 500, the state receives a payment for a given fiscal year, which is then apportioned out among counties with national forest land, in proportion to the land acreage in the national forest within given counties for the fiscal year in question. Title 1, Section 102(c)(1) of the SRSCSDA entitled "DISTRIBUTION METHOD" provides that "[a] State that receives a payment under subsection (a) [the sum of the amounts under elections made by counties] shall distribute the payment among all eligible counties in the State in accordance with [16 U.S.C. § 500]." Id. (emphasis added). But if the proportion of the forest land in a county is different for the 25-percent annual calculation than it is for purposes of the SRSCSDA's "full payment amount" calculation, a possible conflict arises between the statutes.
¶ 20 The provisions of statutes must, insofar as reasonably possible, be construed so as to promote harmony between them and avoid conflicts or repeals by implication. McNeill v. City ofTulsa, 953 P.2d 329, 332 (Okla. 1998); R.V. McGinnis Theaters Pay T.V., Inc. v. Video Indep. Theatres, Inc.,262 F. Supp. 607, 613-14 (N.D. Okla. 1967) (quoting Forston v. Heisler,341 P.2d 252, 255 (Okla. 1959)).
¶ 21 There is no indication that Congress intended a county to be penalized by virtue of its election to take a "full payment amount." To the contrary, materials from the CongressionalRecord indicate Congress was attempting to fashion a means of giving counties more financial assistance in light of decreased forest revenues, since national forest land deprives the county of ad valorem or other tax revenues which would be available were the land in private hands, rather than federal.
¶ 22 Further, it is clear that the SRSCSDA did not amend16 U.S.C. § 500. Therefore, the State must receive an amount not less than the mandated 25% of forest revenues for the preceding fiscal year, to be allocated proportionately among counties in accordance with the forest area for such year. All the receipts must be promptly disbursed to counties by the State, since there is no provision authorizing the State to retain undisbursed national forest revenue money. We believe the intent of Congress was that whatever money was received by a state from the United States, under 16 U.S.C. § 500, would be appropriated and disbursed for the use of the counties when it is received.
¶ 23 Likewise, nowhere in the SRSCSDA is there an indication that Congress intended to depart from the concept that, where a national forest is located in more than one state or more than one county, the distributive share of each fiscal year's revenues to each shall be in proportion to the area in such state or county. Thus, if the proportion of a county's national forest land increases from one fiscal year to the next, it follows that such county's distributive share will increase in the latter year.
¶ 24 To harmonize the provisions of the various statutes for each of the years 2001-2006, the Secretary is required to calculate the amount payable by the United States to each state. This annual amount to the State is the sum of the amounts due to each county, depending on the election made by the county. The Secretary computes the sum based on the three highest 25-percent payments to the State during the eligibility period (1986-1999), and the election made by each county. Each county can make an election whether to take a "25-percent amount" or a "full payment amount," but once the election is made by a county to take the "full payment amount," this election is irrevocable for the remaining years of the 2001-2006 period. Once the annual amount is received by the State, Title 1, Section 102(c)(1) of the SRSCSDA requires the State to distribute the payment among all eligible counties in accordance with 16 U.S.C. § 500.
¶ 25 For example, if County "A" and County "B" each elect to take a "full payment amount" under the SRSCSDA, the Secretary would simply determine the three highest amounts paid to the State during the 1986-1999 period and average them. This is the amount that would be paid to the State in each of the fiscal years 2001-2006. There would be no need to compare the amount which a particular county would have received for a 25-percent payment in a given year, since no counties have elected to use this option. Then, in the year the State receives the payment, the State would determine the amount due to each county by multiplying the amount actually received from the United States in that year times the proportion of forest land acreage in each county for the fiscal year the payment was received.
¶ 26 If on the other hand, County "A" elected to take a "full payment amount" and County "B" opted to stay with a "25-percent amount," the Secretary would have to (i) compute the "25-percent payment," which County "B" would have received in the most recent fiscal year; (ii) compute County "A's" "full payment amount" by multiplying the average of the three highest years' payments times the proportion of forest land in County "A" for these years; and (iii) add these figures, to determine the amount to be paid to the State.
¶ 27 In the first example (both counties electing a full payment amount), the State would simply multiply the total amount received from the United States times the proportion of national forest land in each county for the most recent fiscal year to determine what amount is due each county. In the second example, the State would pay County "B" the 25-percent amount it normally would receive for the most recent fiscal year, then pay the remainder received from the United States to County "A."
¶ 28 Accordingly, the dollar amounts or percentages payable to a given county in a given fiscal year are dependent on forest acreage, on national forest revenues received by the United States during such year, on historical amounts paid to the State between 1986-1999, the election made by each county, and the implementation of the SRSCSDA's requirements as to "full payment amounts" by the United States. Thus, questions of fact are presented which cannot be resolved by an Attorney General's Opinion. 74 O.S. 2001, § 18[74-18](b)(A)(5).
¶ 29 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Annual forestry payments received by the State of Oklahoma pursuant to 16 U.S.C. § 500 and the Secure Rural Schools and Community Self-Determination Act of 2000 as amended at Pub.L. 107-76, 115 Stat. 704, at 739, sec. 751 (2001), must be distributed to counties with parts of a national forest within their respective boundaries in proportion to the acreage of national forest land in each county in the most recent fiscal year. 62 O.S. 2001, § 326[62-326].
 2. The proper amounts payable to Oklahoma in a given fiscal year under the Secure Rural Schools and Community Self-Determination Act of 2000 as amended or 16 U.S.C. § 500, the amounts payable to counties with national forest land within their boundaries under such laws, and the proportions thereof, are questions of fact which cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18[74-18] b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LYNN C. ROGERS Assistant Attorney General
[1] See e-mail from Maitland Sharpe, Director, Policy Analysis, United States Department of Agriculture Forest Service, to Lynn Rogers, Oklahoma Assistant Attorney General (Jan. 7, 2003) (on file with the Oklahoma Attorney General's Office).
[2] See also 146 Cong. Rec. E1818 (2000) (statement of Representative Combest, Chairman of the House Committee on Agriculture).
[3] See letter from Elizabeth Estill, Deputy Chief for Programs and Legislation, USDA Forest Service, to Thomas L. Spencer, Deputy State Treasurer (Nov. 14, 2002) (on file with the office of the Oklahoma Attorney General); Legal Memorandum from Michael J. Gippert, Assistant General Counsel, USDA Office of General Counsel, to Elizabeth Estill, Deputy Chief for Programs and Legislation, USDA Forest Service (Nov. 4, 2002) (on file with the office of the Oklahoma Attorney General).
[4] See also 146 Cong. Rec. E1818 (2000) (statement of Representative Combest, Chairman of the House Committee on Agriculture); 146 Cong. Rec. H9612 (statements of Representatives Goodlatte, Stenholm, Clayton, et al.); 148 Cong. Rec. E1570-03 (2002) (Representative Nethercutt commenting on amendments to the Act).
[5] 115 Stat. at 739, sec. 751(b); see also 146 Cong. Rec. E1818 (2000) (statement of Representative Combest).
[6] It should be noted that under the SRSCSDA, Title 1, § 102(d)(1)(A), a county receiving a "full payment amount" must spend not less than 80% nor more than 85% of such payment in the same manner as a 25-percent payment would be spent. The county must also elect to reserve the balance for projects under Title II or Title III of the SRSCSDA, or return the balance to the United States. Id. § 102(d)(1)(B).